IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| COLFIN BULLS FUNDING A, LLC, | ) | |
|---|---|---|
| Appellant, | ) | |
| v. | ) | Case No: 15 C 11065 |
| DH MORTGAGE HOLDER, LLC, et al., | ) | |
| Appellees. | ) | |

## MEMORANDUM OPINION AND ORDER

ColFin Bulls Funding A, LLC ("ColFin Bulls") appeals from an order of the Bankruptcy Court in an adversary proceeding stemming from In re Dvorkin Holdings, LLC, No. 12-B-31336. ColFin Bulls had sold an "Allowed Lynwood Claim" to another creditor, ASM Capital V, L.P. ("ASM Capital"), which in turn agreed to assign it to DH Mortgage Holder, LLC ("DH Mortgage Holder"), a subsidiary of debtor Dvorkin Holdings, LLC ("Dvorkin"). ColFin Bulls objected that both the Proof of Claim filed by ASM Capital (the "Contested Claim") and the Notice of Partial Transfer of Claim Other Than for Security filed by the Trustee on behalf of DH Mortgage Holder (the "Contested Transfer") mischaracterized ColFin Bulls' remaining claims against the bankruptcy estate. That objection was overruled on the ground that ColFin Bulls had assigned its claim to ASM Capital, and this appeal then followed.

## Standard of Review

District courts review the decisions of a bankruptcy court by applying the same standards as our Court of Appeals does in such cases (Kovacs v. United States, 739 F.3d 1020, 1023 (7th Cir. 2014)). Because the interpretation of an assignment agreement poses a question of law, it is reviewed de novo (ReGen Capital I, Inc. v. UAL Corp. (In re UAL Corp.), 635 F.3d 312, 316 (7th Cir. 2011)).

## Background[1]

Dvorkin filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 7, 2012, and a Trustee was appointed for it. ColFin Bulls then filed a Proof of Claim ("Claim 14") in that case on the basis of two loans that it had acquired: the "Lombard Loan" and the "Lynwood Loan." Both those loans were secured by mortgages (on the "Lombard Parcel" and the "Lynwood Parcels" respectively), and both were in default. This action turns largely on the part of Claim 14 that the Trustee was to ask the Bankruptcy Court to allow regarding the Lynwood Loan ("Allowed Lynwood Claim").

Dvorkin's obligation on the Lynwood Loan stemmed from a guaranty agreement ("Lynwood Guaranty") that it had signed along with the borrower's other three owners.[2] As might be expected, the Lynwood Guaranty imposed joint and several liability on the four guarantors (Guaranty ¶ 10) and provided (id. ¶ 11):

> [T]his Guaranty shall inure to the benefit of and may be enforced by Lender and any subsequent holder of the Note and their respective successors and assigns.

---

[1] References to the parties' appellate memoranda before this Court take the form "Mem. --," prefixed with "C." for ColFin Bulls and "D." for DH Mortgage Holder and the Trustee. Although ASM Capital was listed as an interested party in the notice of appeal from the Bankruptcy Court [Dkt. No. 1] and it is named as an appellee by the Clerk on the District Court docket, it was not listed on the civil cover sheet that accompanied the notice of appeal and it has submitted no appellate memorandum. Rather than using the citation style "A. --" for every document in the appendix to ColFin Bulls' memorandum, this opinion cites the Assignment [A. 2-9] as "Assignment --," the Settlement Agreement [A. 31-44] as "Settlement § --," and the Lynwood Guaranty [A. 209-21] as "Guaranty ¶ --," with all those documents being defined in the body of this opinion.

[2] By contrast, Dvorkin was a primary obligor on the Lombard Loan.

All its terms were to be construed according to Illinois law (id. ¶ 14).

On June 6, 2014 the Trustee asked the Bankruptcy Court to approve a settlement agreement that ColFin Bulls had reached with Dvorkin and various other parties associated with the Lombard and Lynwood Parcels ("Settlement Agreement"). That agreement specified that it was to be governed by the Bankruptcy Code and Illinois law (Settlement § 19) and prescribed different treatments for the part of Claim 14 relating to the Lombard Loan and the part relating to the Lynwood Loan (respectively referred to in this opinion -- but not the Settlement Agreement itself -- as the "Lombard Claim" and "Lynwood Claim").

As for the Lombard Claim, it would be allowed in the full amount of the outstanding balance of the Lombard Loan (the "Allowed Lombard Claim") and would continue to be secured by the Lombard Parcel (Settlement § 4(a)). To satisfy the Allowed Lombard Claim, the Trustee was then to sell the Lombard Parcel (id. § 5), although ColFin Bulls retained an option to redeem it through a credit bid of the Allowed Lombard Claim (id. § 6).

But by contrast the Lynwood Claim was woefully undersecured (Settlement § 7). Hence the Settlement Agreement provided that after the sale or redemption of the Lombard Parcel, ColFin Bulls was to receive the deeds to the Lynwood Parcels in lieu of foreclosure (id.) and would still retain an unsecured claim for roughly half of the outstanding balance of the Lynwood Loan (id. § 4(b)).

In the course of prescribing the treatment of the Lynwood Claim, the Settlement Agreement turned "Allowed Lynwood Claim" into a defined term that would be echoed in later documents (Settlement § 4(b)):

> [T]he Proof of Claim [No. 14] shall be allowed as an unsecured claim against the
> Bankruptcy Estate on account of the Lynwood Loan in the amount of $1,250,000
> (the "<u>Allowed Lynwood Claim</u>").

But that term is not used again in the Settlement Agreement, except (1) to say that the Allowed Lynwood Claim will not be reduced by any disposition of the Lynwood Parcels (<u>id.</u>) and (2) to clarify that the boilerplate general release does not cover that claim (<u>id.</u> § 9(b)).

Crucially, the order allowing the Lombard and Lynwood Claims in the amounts indicated ("Claim Allowance Order") was not to be entered until after the Lombard Parcel had been sold or redeemed and the deeds to the Lynwood Parcels had been delivered (Settlement § 4). And those transactions had to wait for the Settlement Agreement's "Effective Date," which Settlement § 3 specified would be the date when the order approving it (the "Approval Order") became final and unappealable. That Approval Order was entered on July 1, 2014, and the interested parties then executed the Settlement Agreement later the same month (on July 29).

ColFin Bulls then entered into a Claim Purchase Agreement with ASM Capital on November 18, 2014 (the "Assignment"). It thereby sold (Assignment 1):

> all of [its] right, title, benefit and interest in and to that certain general unsecured
> claim denominated as the "<u>Allowed Lynwood Claim</u>" in that certain Settlement
> Agreement dated as of July 29, 2014.

To accomplish that transfer ASM Capital was permitted to file a new proof of claim to bifurcate Claim 14 (Assignment 3), and the parties agreed to have the Assignment construed in accordance with New York law (Assignment 6).

On December 3, 2014 ASM Capital filed a notice of partial transfer of claim (separate from the one underlying this appeal) that referred to the Approval Order. It then turned around and agreed as part of its own settlement with Dvorkin to transfer the Allowed Lynwood Claim to

DH Mortgage Holder. And to effectuate that assignment ASM Capital filed the Contested Claim on July 1, 2015 (A. 392-94), with the Trustee filing the Contested Transfer the following day (C. Mem. 7; D. Mem. 7). In the Addendum to the Contested Claim ASM Capital stated that "ColFin retains no rights under the Lynwood Guaranty" (A. 395 ¶ 9).

And therein lies the rub. For the sale or redemption of the Lombard Parcel was the linchpin of the Settlement Agreement -- so much so that if neither had occurred within 270 days of its Effective Date, Settlement § 8 provided:

> [T]his Agreement shall automatically terminate and be rendered null and void <u>ab initio</u> in its entirety, and the Parties shall have and be restored to their respective rights, remedies and obligations existing immediately before the Effective Date.

According to ColFin Bulls, that termination occurred on April 13, 2015 (C. Mem. 5), so that the 270 day time limit has expired.

In light of that claimed termination and the retroactive unraveling of the prospective transfers contemplated by the Settlement Agreement, on July 22, 2015 ColFin Bulls objected to ASM Capital's representation that ColFin Bulls had retained no interest under the Lynwood Guaranty (and it followed up the next day with an objection to the Contested Transfer to the extent that it incorporated ASM Capital's position on the scope of the Contested Claim). ColFin Bulls argued that the termination of the Settlement Agreement left it with its original rights to the full amount of the Lynwood Loan and that in executing an assignment of the Allowed Lynwood Claim it had therefore sold its right to only $1,250,000 of the Lynwood Claim. It characterized

the portion of the Lynwood Claim in excess of that sum as the "Remaining Lynwood Claim," a term appearing nowhere in the Settlement Agreement or the Assignment.[3]

On November 25, 2015 the Bankruptcy Court entered an order that stated simply "[t]he Objection is overruled because ColFin assigned its entire claim to ASM Capital V, L.P."[4] ColFin Bulls filed its notice of appeal on December 8.

### **Extent of the Allowed Lynwood Claim**

This appeal ultimately stems from the fact that the Assignment adopted terms defined by the Settlement Agreement without including a corollary provision meshing with Settlement § 8. Further trouble is created by the Assignment's undisciplined structure, with the same subjects treated multiple times and with the absence of crucial definitions, with claimed meanings instead taking the form of representations or phrased in terms of the thing to be defined. Its sentences are shot through with needless boilerplate and excess verbiage. But poor draftsmanship does not in itself render a contract ambiguous. How to make sense of the Assignment is governed by

---

[3] ColFin Bulls' separate adversary proceeding before the Bankruptcy Court to declare the Settlement Agreement null and void under Settlement § 8 is still pending (C. Mem. 5-6; D. Mem. 8). It also amended Claim 14 on May 29, 2015 to reflect its position that the Settlement Agreement was void (C. Mem. 6). That issue has not been teed up for resolution on the current appeal, and this opinion consequently expresses no views on the parties' competing positions on that score.

[4] DH Mortgage Holder and the Trustee also raised other issues with ColFin Bulls' objections before the Bankruptcy Court, including the latter's standing to object to the Contested Transfer and its failure to provide adequate notice in doing so. Because the Bankruptcy Court based its ruling on ColFin Bulls' having sold its claim, this opinion also does not reach those issues.

New York law (Assignment 6), while the interpretation of the Settlement Agreement itself looks to Illinois law (Settlement § 19).

In New York as elsewhere "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent" (Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002)). In that respect the New York Court of Appeals has reiterated (Ellington v. EMI Music, Inc., 21 N.E.3d 1000, 1003 (N.Y. 2014) (internal quotation marks and citations omitted)):

> Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole. . . . An agreement is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion. Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations.

Relatedly, the "reading of a contract should not render any portion meaningless" (Beal Sav. Bank v. Sommer, 865 N.E.2d 1210, 1213 (N.Y. 2007)), and the "use of different terms in the same agreement . . . implies that they are to be afforded different meanings" (Platek v. Town of Hamburg, 26 N.E.3d 1167, 1173 (N.Y. 2015)).

Nevertheless "[i]t is well settled that trumping language such as a 'notwithstanding' provision controls over any contrary language in a contract" (Warberg Opportunistic Trading Fund, LP v. GeoResources, Inc., 973 N.Y.S.2d 187, 191 (N.Y. App. Div. 2013) (internal quotation marks omitted)). And terms omitted from a contract should be treated as having been omitted intentionally, especially where sophisticated parties are involved and the omitted terms

are readily found in similar agreements (see <u>Quadrant Structured Prods. Co. v. Vertin</u>, 16 N.E.3d 1165, 1172 (N.Y. 2014)).

Illinois too follows the rule that the "primary objective in construing a contract is to give effect to the intent of the parties" (<u>Gallagher v. Lenart</u>, 226 Ill. 2d 208, 232, 784 N.E.2d 43, 58 (2007)). Intent is determined by the plain language and ordinary meaning of the contract alone, "construed as a whole, viewing each part in light of the others" (<u>id.</u> at 234, 784 N.E.2d at 58). Only if the contract is susceptible to more than one meaning is it ambiguous (<u>id.</u>).

In its first sentence the Assignment identifies what is being alienated as the "general unsecured claim denominated as the '<u>Allowed Lynwood Claim</u>' in [the] Settlement Agreement" (Assignment 1). And it concludes its (non-exhaustive) list of things that were not to be assigned by emphasizing that "Allowed Lynwood Claim" (as well as the terms "Lynwood Guaranty" and "Lynwood Loan") gets its meaning from the Settlement Agreement (Assignment 2).[5]

DH Mortgage Holder is thus incorrect in asserting that the Assignment did not incorporate the definition of the Allowed Lynwood Claim from the Settlement Agreement (D. Mem. 11-13). It contends untenably that assigning a claim identified in the Settlement Agreement differs meaningfully from assigning all right, title, benefit and interest in a claim denominated in identical terms in the Settlement Agreement (<u>id.</u>).

---

[5] Although the exact phrase is "as all such terms are defined and set forth in the Settlement Agreement and/or the Proof of Claim" (Assignment 2), the term "Allowed Lynwood Claim" does not appear in Claim 14.

Great care was taken in defining narrowly the scope of what was to be transferred, with the Assignment stating further that "such transaction consists of the purchase of <u>solely</u> that portion of the Proof of Claim (as defined below) evidencing or relating to the Allowed Lynwood Claim" (Assignment 1, emphasis added). And then it goes on to say (<u>id.</u> at 2) (paragraph breaks added):

> Notwithstanding anything to the contrary herein, Seller does not sell or assign to Purchaser, but expressly reserves and retains, any and all other rights, claims and entitlements against the Debtor, its property, its estate, or otherwise, arising under the Proof of Claim other than the Allowed Lynwood Claim, including, without limitation, all other rights, claims and entitlements as set forth in the Settlement Agreement.
>
> Without limiting the generality of the foregoing, Seller expressly reserves and retains any and all rights, claims and entitlements arising under the Proof of Claim, the Settlement Agreement, or otherwise, relating to
>
>> (i) the Allowed Lombard Claim, the Lombard Loan, . . . and any and all other loan documents evidencing, securing or otherwise relating to the Lombard Loan . . . , and
>>
>> (ii) the Lynwood Loan, the Lynwood Parcels, and Lynwood Senior Mortgage, the Deed in Lieu Documents and any and all other loan documents evidencing, securing or otherwise relating to the Lynwood Loan other than the Lynwood Guaranty executed by the Debtor (as all such terms are defined and set forth in the Settlement Agreement and/or the Proof of Claim), it being expressly understood and agreed by Purchaser that it is solely acquiring the Allowed Lynwood Claim arising under and relating solely to Debtor's liability under the Lynwood Guaranty of the Lynwood Loan (as all such terms are defined and set forth in the Settlement Agreement and/or the Proof of Claim).

Consequently everything other than the "general unsecured claim denominated as the '<u>Allowed Lynwood Claim</u>' in [the] Settlement Agreement" (Assignment 1) was excluded from the transfer. And under the Settlement Agreement the "Allowed Lynwood Claim" is defined in terms of that

- 9 -

portion of Claim 14 that will be allowed (following the transactions regarding the Lombard and Lynwood Parcels) on account of the Lynwood Loan (Settlement § 4(b)).

To be sure, DH Mortgage Holder's position that what the Assignment transferred was the Lynwood Claim as it then stood (on the understanding that it would be reduced to the amount of the Allowed Lynwood Claim at some point in the future) rather than an Allowed Lynwood Claim with only a potential for future existence is best advanced (though not persuasively) by the passage it quotes from Assignment 3 (D. Mem. 16-17):

> For the avoidance of doubt, the term "Allowed Lynwood Claim" shall include, unless expressly agreed otherwise, (a) the applicable portion of the Proof of Claim as set forth above . . .

But what constitutes the "applicable portion" of that claim is not so uncomplicated as DH Mortgage Holder presents it, for the description of Claim 14 that precedes it speaks in terms of both the full amount of the Lynwood Claim and, more importantly for present purposes, its later reduction pursuant to the Settlement Agreement. This opinion need not decide, however, whether that complication means that the quoted passage is ambiguous, for the meaning of the document as a whole does not turn on it. That is because DH Mortgage Holder must rely on a definition prefaced by "unless expressly agreed otherwise" to overcome the necessary implication of provisions introduced by "[n]otwithstanding anything to the contrary herein" (see Assignment 2).

## DH Mortgage Holder's Other Arguments

At this point it surely cannot be said that the Assignment unambiguously conveys the whole Lynwood Claim, so that the Bankruptcy Court's order now on appeal must be vacated in any event. And even were the other clauses upon which DH Mortgage Holder seeks to rely

- 10 -

irreconcilable with Assignment 2's limitations, the fact that there is only one "notwithstanding" clause implies the absence of ambiguity. But lest it be thought that ColFin Bulls is saved only by a technical rule of construction -- which is after all merely inferential to assist in reaching the paramount goal, the parties' intent -- this opinion now turns to those clauses. They too support the view that the Assignment conveyed only the claim that might come into existence through the Claim Allowance Order.

**Documentation Supporting the Allowed Lynwood Claim**

Aside from the definition of "Allowed Lynwood Claim," DH Mortgage Holder argues that all of ColFin Bulls' rights under the Lynwood Guaranty were assigned to ASM Capital (and then in turn to it) as "documentation supporting the Allowed Lynwood Claim" (D. Mem. 10-11, 13-14, 15). It notes that Assignment 1 (emphasis added) describes the transaction as involving

> that portion of the Proof of Claim (as defined below) <u>evidencing</u> or relating to the Allowed Lynwood Claim.

And Assignment 3 reads:

> For the avoidance of doubt, the term "<u>Allowed Lynwood Claim</u>" shall include, unless expressly agreed to otherwise, (a) the applicable portion of the Proof of Claim as set forth above and any and all multiple other proofs of claim filed at any time relating thereto, whether before or after the date of execution of this Agreement, by or on behalf of Seller in respect of the Allowed Lynwood Claim, and (b) any and all of Seller's documentation supporting the Allowed Lynwood Claim.

DH Mortgage Holder also suggests that the Lynwood Guaranty was specifically excluded from the documents withheld (D. Mem. 10-11, 13-14, 15).

But the parties to the Assignment could more easily and more straightforwardly have said right out that ASM Capital was acquiring the Lynwood Guaranty entirely. They did not. And

- 11 -

because there is no necessity for assigning the guaranty itself, such a transfer is not a necessary implication of what was said. Nor is the Assignment worded as though the parties understood that the Lynwood Guaranty was being sold.

Any restriction that Illinois imposes on the transfer of a guaranty agreement does not apply when what is being assigned is instead an accrued chose in action for breach of that guaranty (Albers v. Holsman, 289 Ill. App. 239, 243-44, 7 N.E.2d 161, 163 (1st Dist. 1937)).[6] And that is precisely what was considered here: the uncomplicated transfer of a bankruptcy claim stemming from an unpaid guaranty obligation.

Thus the wording of the Assignment itself discloses that what ColFin Bulls reserved were "all rights, claims and entitlements arising under the Proof of Claim, the Settlement Agreement, or otherwise, relating to" various loan documents (other than the Lynwood Guaranty), not the documents themselves (see Assignment 2), for all that was contemplated (and thus the only thing in need of being restricted) was the transfer of rights arising under or relating to documents. No document whose possession on its own granted the holder any rights was to change hands. And what was sold were not -- as DH Mortgage Holder would have it -- ColFin Bulls' rights arising under the Lynwood Guaranty, but rather its rights relating to the guaranty arising under Claim 14 and the Settlement Agreement (or some similar agreement).

---

[6] Guaranties governed by Illinois law are held to be assignable or not on a case-by-case analysis, rather than on the distinction between general and special guaranties that decides the matter in some other jurisdictions (see Grundstad v. Ritt, 166 F.3d 867, 870 (7th Cir. 1999)).

In that light, the concluding summary of what ColFin Bulls expressly reserved -- which would have been an over-lawyered periphrasis had it been intended to transfer the Lynwood Guaranty itself -- says no more or less than the parties meant it to say (Assignment 2):

> it being expressly understood and agreed by Purchaser that it is solely acquiring the Allowed Lynwood Claim arising under and relating solely to Debtor's liability under the Lynwood Guaranty of the Lynwood Loan.

Only a potential liability under the Lynwood Guaranty was transferred, and only Dvorkin's potential liability. Anyone entitled to enforce that guaranty as a whole, by contrast, would have a claim on the other three guarantors as well. So ASM Capital acquired (and DH Mortgage Holder then succeeded to) a potential claim that might be allowed by the Bankruptcy Court relating to a liability under the Lynwood Guaranty, not the guaranty itself.

Instead the Assignment's mentions (1) of "documentation supporting" and (2) of parts of Claim 14 "evidencing" the Allowed Lynwood Claim amount to nothing more than that ASM Capital acquired whatever contractual rights (and only those rights) ColFin Bulls had under the Lynwood Guaranty that would make the assignment of the Allowed Lynwood Claim effective, an assignment that it must be remembered would involve ASM Capital's filing of its own proof of claim (with supporting documentation) to bifurcate Claim 14. To be sure, DH Mortgage Holder now has ASM Capital's right to a physical copy of the Lynwood Guaranty, but the possession of that document would not carry any rights with it. It is a contract, not a negotiable

instrument. There is no "holder" of the Lynwood Guaranty,[7] and its force is not dissipated by the existence of multiple copies.

**Absence of a Denominated "Remaining Lynwood Claim"**

DH Mortgage Holder is also correct that neither the Assignment nor the Settlement Agreement says anything about a "Remaining Lynwood Claim" (D. Mem. 14-16). It is not among the things specifically reserved by the Assignment.

But it does not therefore follow that ColFin Bulls retained nothing of the Lynwood Claim. Every specific enumeration in the lengthy portion of the Assignment quoted above is explicit that the reservation is not exhaustive, and so the only potential issue is whether it is sensible to speak of any portion of Claim 14 arising from the Lynwood Guaranty other than the Allowed Lynwood Claim. And the answer to that question is clearly "yes," because the Allowed Lynwood Claim is by definition both smaller than the Lynwood Claim and -- perhaps more critically -- contingent. Because ColFin Bulls assigned only the Allowed Lynwood Claim and expressly reserved the rest, again by definition it retained that nameless portion.

And the reason that the portion retained by ColFin Bulls is not named in the Assignment becomes clear once it is considered that ColFin Bulls' own interpretation of that agreement is flawed. On DH Mortgage Holder's telling, ColFin Bulls is hoist by its own petard due to the Assignment's infelicities, so that it purportedly risks losing even its right to foreclose on the

---

[7] Thus the Lynwood Guaranty says that it may be enforced by the "Lender and any subsequent holder of the Note" (Guaranty ¶ 11), not by any holder of the document itself.

Lynwood Parcels should it continue to press its position that the Settlement Agreement has terminated (D. Mem. 19-21; see also C. Mem. 16), while ColFin Bulls maintains that everyone will walk away from the Assignment with something of value should the Settlement Agreement fall (C. Mem. 18). But ASM Capital in fact purchased something with only a potential existence, so that (if it does come into existence) is all that DH Mortgage Holder acquired as well.

For if the Bankruptcy Court does not enter the Claim Allowance Order because ColFin Bulls ultimately prevails on the impact of the earlier-described 270 day provision, ColFin Bulls' supposed "Remaining Lynwood Claim" will in fact constitute the entire Lynwood Claim. Before the entry of that Order there is no such thing as an Allowed Lynwood Claim, and any other claim allowed in respect of the Lynwood Guaranty would not be the Allowed Lynwood Claim as defined by the Settlement Agreement. There is no mention of any "Remaining Lynwood Claim" because there would be nothing to be deducted from the Lynwood Claim in the first place if the Settlement Agreement has terminated.[8]

This opinion's reading is strengthened by the fact that the Assignment contemplates the possible evaporation of the thing being transferred. Assignment 4 reads:

> Notwithstanding anything to the contrary set forth immediately above [in ColFin Bulls' representations, warranties and covenants], Purchaser acknowledges and agrees that the allowance and treatment of the Allowed Lynwood Claim is subject

---

[8] Consequently ColFin Bulls' suggestion that the Assignment permitted ASM Capital to bifurcate Claim 14 in order to separate the Allowed Lynwood Claim from the Remaining Lynwood Claim (C. Mem. 12-13 n.3) cannot be accepted. Indeed, given that Claim 14 also included amounts arising from the Lombard Loan, it is certain that bifurcation was intended instead to sever the Allowed Lombard and Lynwood Claims.

      to the express terms and provisions of the Settlement Agreement and the Approval Order.

And then the Assignment describes in detail what should happen in the event that the Allowed Lynwood Claim is "avoided, disallowed, subordinated, reduced, or otherwise impaired" (id. at 5; see also id. at 3).

      Thus ColFin Bulls did not -- as it now says it did -- split its cause of action against Dvorkin in the event that the Settlement Agreement fell through, assigning the first $1,250,000 of any recovery to ASM Capital and reserving the remainder for itself.[9] More importantly, the absence of a reference to any "Remaining Lynwood Claim" in the Assignment and Settlement Agreement does not vindicate DH Mortgage Holder's position.

---

[9] Not that splitting a cause of action to recover on a debt any longer prevents the partial assignee from suing at law (rather than being restricted to equity) in either New York or Illinois, so long as others having a claim to the debt are joined as co-plaintiffs (see Kronman v. Palm Mgmt. Assocs. Ltd. P'ship, 714 N.Y.S.2d 49, 50 (N.Y. App. Div. 2000), citing Blake v. Welden, 51 N.E.2d 677, 680 (N.Y. 1943); Ebaloy, Inc. v. Square Deal Plumbing & Heating Supply House, Inc., 27 Ill. App. 2d 36, 48, 169 N.E.2d 527, 533 (1st Dist. 1960)). And thus In re Stralem, 758 N.Y.S.2d 345, 347 (N.Y. App. Div. 2003) articulates only a presumption that a New York assignment agreement transfers a whole interest "unless in some way qualified" -- a presumption plainly rebutted in this case by Assignment 2's trumping provisions. Consequently DH Mortgage Holder's arguments as to claim splitting and the presumption against partial assignments (D. Mem. 21-23) would not be availing even if ColFin Bulls were correct as to the effect of the Assignment. Indeed, DH Mortgage Holder's reading introduces a more problematic claim splitting than it ascribes to ColFin Bulls, for it would have ColFin Bulls assign a guaranty enforceable by any holder of a promissory note, but not the note itself, without allocating any enforcement or recovery rights (see D. Mem. 10-11, 13-14, 15). That looks like claim duplication rather than simple splitting.

**Stated Value of the Allowed Lynwood Claim**

DH Mortgage Holder next attempts to lay hold of its parent company's obligation, should the Settlement Agreement have terminated, by drawing attention to ColFin Bulls' representation in Assignment 1 that "the Allowed Lynwood Claim is in an amount not less than $1,250,000.00" (D. Mem. 17-18). As stated earlier, Settlement § 4(b), the only place where the concept "Allowed Lynwood Claim" is defined, plainly quantifies its amount as $1,250,000 -- no more and no less. And also as stated earlier, when a term specifically defined in one document (initial capital letters and all) is employed in identical form in a related document, its meaning is unchanged.

Here the Assignment's injection of the words "not less than" into the picture are no better than poor draftsmanship -- they have no identifiable substantive content and find no purchase elsewhere in the Assignment. This Court has not been told which party's lawyer bears responsibility for that impermissible rewrite, but it frankly does not matter. These inserted words, and any attempted rationalization offered by way of explanation, should and will be disregarded.

**Conclusion**

This is a final judgment reversing the Bankruptcy Court's November 25, 2015 order that is the subject of this appeal. If it is hereafter determined in the underlying bankruptcy case that the Settlement Agreement is null and void under Settlement § 8, this Court holds that ColFin Bulls will be the owner of the entire Lynwood Claim, just as it was before it entered into the Settlement Agreement and then executed the Assignment. Finally, whether or not it is hereafter determined in the underlying bankruptcy case that the Settlement Agreement is null and void

under Settlement § 8, this Court holds that ASM Capital's Proof of Claim is denied and that any order substituting DH Mortgage Holder for ASM Capital in that regard is hereby vacated.

                                                  _____
                                                  Milton I. Shadur
                                                  Senior United States District Judge

Date: April 26, 2016